**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**CITIES SERVICE COMPANY et al.,**
**Defendants.**

**Cities Service Oil Company, Appellant.**

**No. 7216.**

United States Court of Appeals
First Circuit.

May 8, 1969.

---

James D. St. Clair, Wellesley Hills, Mass., with whom Harold Hestnes and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Wm. Richard Haddad, Atty., Dept. of Justice, with whom Edwin M. Zimmerman, Richard W. McLaren, Asst. Attys. Gen., and Gregory B. Hovendon, Atty., Dept. of Justice, were on brief, for the United States, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

■ This is an appeal from an interlocutory order in a civil action brought by the United States under Section 7 of the Clayton Act, 38 Stat. 731 (1914), as amended, 15 U.S.C. § 18 (1958). The government alleges that acquisition by Cities Service of properties constituting the retail gasoline business of Jenney Manufacturing Company may substantially lessen competition or tend to create a monopoly. On May 1, 1968 the district court, pursuant to a stipulation, entered an order subject to further orders of the court, governing the disposition of the acquired properties pending the outcome of the case. The parties, however, were unable to agree as to whether Cities Service should be allowed to sell one of the acquired properties, the Chelsea Marine petroleum terminal, and the question was submitted to the court. The district court, after hearing, denied Cities Service's motion for approval of the sale.[1]

Initially we must decide whether a court of appeals has jurisdiction over interlocutory appeals in civil antitrust actions brought by the government.

The parties are in agreement that this court has jurisdiction. Appellant Cities Service relies chiefly on the language of 28 U.S.C. § 1292(a) (1) and the Third Circuit decision in United States v. Ingersoll-Rand Co., 320 F.2d 509 (3d Cir. 1963) for the proposition that "[s]ince there is no provision for direct appeal to the Supreme Court of the order denying the motion for an order approving the sale of the Chelsea terminal, the Court has jurisdiction over such appeal by virtue of Section 1292(a) (1)." Appellee, the United States government, more broadly argues that legislative history, despite conventional judicial assumptions to the contrary, has long supported court of appeals jurisdiction over interlocutory orders in antitrust actions.

We have therefore faced a joint and unopposed advocacy for our taking juris-

---

1. We agree with the parties that an interlocutory order under 28 U.S.C. § 1292 (a) (1) is present in this case. In determining the existence of such an order, the court will look to its substantial effect rather than its terminology. Hotel & Restaurant Employees and Bartenders' Int'l Union, A.F.L.-C.I.O. v. Del Valle, 328 F.2d 885 (1st Cir.), cert. denied, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1964); McCoy v. Louisiana State Board of Education, 345 F.2d 720 (5th Cir. 1965).

diction. Handicapped by the lack of an adversary confrontation on this issue, we have nevertheless been obligated to seek and assess the considerations which might militate against the jurisdictional posture sought by both parties. Unfortunately, the unespoused case seems the more persuasive to us.

■ This is a confrontation between two statutes of hallowed history. One is the statute defining part of the appellate jurisdiction of courts of appeals, now 28 U.S.C. § 1292(a) (1), which says they shall have jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." This had its origins in section 7 of the Evarts Act of 1891, creating the courts of appeals, and has gone through a number of mutations. The other statute is the "Expediting Act", 32 Stat. 823 (1903), as amended, 15 U.S.C. § 29 (1958), which provides that in any civil antitrust action brought by the government, "an appeal from the final judgment of the district court will lie only to the Supreme Court."

The purposes of the two statutes are to some extent conflicting. Section 1292 represents a Congressional judgment that some interlocutory orders are of such significance that appellate review is necessary in order to prevent irreparable harm to an unsuccessful litigant. The purpose of the Expediting Act was to facilitate review by the Supreme Court of a class of antitrust cases deemed particularly important.[2] While scholars and jurists alike question the appropriateness of automatic Supreme Court review and the desirability of expedition of an entire case to the Supreme Court, it is clear that the taking by courts of appeals of jurisdiction to review interlocutory orders in government civil antitrust actions would to some extent impinge upon both aspects of the Expediting Act: the final review jurisdiction of the Supreme Court and expedition to the Supreme Court.[3]

■ The critical question in our view, therefore, is whether there have been any indications from Congress in legislation since the passing of the Expediting Act that the operation of that Act was to be modified, for we are unwilling to assume that a clear policy was altered by indirection. We conclude that there have been no such indications. In passing the Expediting Act in 1903, Congress chose to effectuate its intent by vesting review of antitrust actions directly in the Supreme Court. In 1906, 1911, and 1925 legislative changes restored interlocutory review jurisdiction to the courts of appeals in certain classes of cases. However, at no time did Congress address itself to interlocutory appeals in antitrust actions.[4] The 1948 revision of the

2. 36 Cong.Rec. 1679 (1903).

3. While it may be possible in many cases for an antitrust suit to proceed on the merits while an interlocutory appeal takes its course, without lengthening the total time for final decision by the Supreme Court, this will not always be so. There may well be an interlocutory order which is so critically important that, if unreversed, it either moots or vastly affects the case on the merits. In such a case it is unrealistic to suppose that counsel and district court would aggressively pursue the merits pending resolution on appeal of the interlocutory order. By the same token, if such resolution were effectively to moot the case or cause either

side to cease litigating, there would be no occasion for Supreme Court consideration of any part of the case except the rare chance that it might grant certiorari on the interlocutory order. See Comment, Proposed Amendment to Expediting Act Would Eliminate Direct Appeal to Supreme Court, 39 N.Y.U.L.Rev. 319, 322–324 (1964).

4. Mr. Justice Van Devanter, in testimony on the Judges' Bill of 1925, suggested that three judge court interlocutory orders in antitrust cases would be directly reviewable in the Supreme Court. Hearing on S. 2060 and S. 2061 before a subcommittee of the Senate Judiciary Committee, 68th Cong., 1st Sess., p. 6. This rather

Judicial Code (§ 1292) did no more than codify existing law. In short, we cannot assume that the Expediting Act has been partially repealed *sub silentio*. We are persuaded that the history of the relevant legislation supports our holding and it is to a more detailed discussion of that history that we now turn.

Cities Service contends that the 1948 revision of the Judicial Code creates a symmetrical scheme, with § 1291 saying that courts of appeals could review final judgments of district courts except where direct review of such judgments may be had in the Supreme Court, and § 1292 giving courts of appeals review of interlocutory orders unless their direct review is to be had in the Supreme Court. This indeed is what the Third Circuit held in United States v. Ingersoll-Rand, 320 F.2d 509 (3d Cir. 1963) in a thoughtful opinion by Judge Biggs.

This is persuasive, were this a matter of first impression. But what we face is not a clear slate, but rather a palimpsest of many layers of statutory changes, legislative history, and Supreme Court interpretation.

Except for *Ingersoll-Rand*, decisions of the Supreme Court and courts of appeals have unanimously taken the position, since United States v. California Cooperative Canneries, 279 U.S. 553, 49 S.

Ct. 423, 73 L.Ed. 838 (1929), that the Expediting Act bars appeals from interlocutory orders in government antitrust cases to courts of appeals. As stated by Mr. Justice Brandeis in dictum in *Canneries*, " * * * Congress limited the right of review to an appeal from the decree which disposed of all matters, see Collins v. Miller, 252 U.S. 364, [40 S.Ct. 347, 64 L.Ed. 616] and it precluded the possibility of an appeal to either court from an interlocutory decree." This principal, as the government phrases it, became "commonplace" in subsequent case law.[5] Of recent vintage is the recognition of *Canneries* in the brief but explicit majority opinion reference and the extensive discussion of Mr. Justice Harlan, concurring and dissenting, in Brown Shoe Co. v. United States, 370 U.S. 294, 305, n. 9, and 357–365, 82 S.Ct. 1502, 8 L.Ed.2d 510. And, most recently, Mr. Justice Goldberg, acting as Circuit Justice in considering the government's application for temporary injunction of a merger pending the filing and disposition of writs of certiorari in the Supreme Court, in United States v. FMC Corp., 84 S.Ct. 4, 11 L.Ed.2d 20 (1963), declared himself unpersuaded that, as *Ingersoll-Rand* had held, the 1948 revision of the Judicial Code had "implicitly repealed a well-established construction of the Expediting Act." *Id.* at 7.

speculative statement is the only reference to interlocutory orders in antitrust cases. That the proposition itself is not free from doubt is indicated not only by substantial authority, *see* e. g., Hart and Wechsler, The Federal Courts and The Federal System, 1372 (1953) ; 6 Moore's Federal Practice, § 54.05(4), p. 29 ; United States v. FMC Corp., 84 S.Ct. 4, 11 L.Ed.2d 20 (Goldberg, Circuit Justice, 1963), but also by the fact that in 1906 Congress felt it necessary to provide specifically for appeal from interlocutory orders in cases involving the Interstate Commerce Commission directly to the Supreme Court. 34 Stat. 584, 592 (1906).

5. Opinions of the Supreme Court expressly or implicitly acknowledging the rule include Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944) ; United States

Alkali Export Ass'n v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945) ; De Beers Consolidated Mines v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945).

The following circuits have also followed the rule, often, it is true, without extended analysis :

First: In re Narragansett Pier Amusement Corp., 224 F.2d 231 (1st Cir.), cert. denied, 350 U.S. 862, 76 S.Ct. 103, 100 L.Ed. 765 (1955).

Second: United States v. ASCAP, 317 F.2d 90, 92 (2d Cir. 1963).

Ninth: United States v. FMC Corp., 321 F.2d 534 (9th Cir. 1963).

D.C.: National Ass'n of Real Estate Bds. v. United States, 85 U.S.App.D.C. 165, 176 F.2d 631 (1949).

For two comprehensive notes on the issue, *see* Note, 64 Colum.L.Rev. 592 (1964) and Note, 77 Harv.L.Rev. 566 (1964).

In the case at bar, the government, which has made the more extensive argument for jurisdiction, does not quarrel with Mr. Justice Goldberg's analysis of the 1948 code revision. It urges us to follow the result of *Ingersoll-Rand* but for a different reason: namely, that while the 1948 code revision merely confirmed prior law, the prior law, *Canneries* notwithstanding, gave power to courts of appeals to review interlocutory injunctions in this type of antitrust case.

The development of the prior law may be summarized as follows:

(1) In 1891 the Evarts Act (26 Stat. 828), creating the present system of Courts of Appeals, contained two sections relevant to our discussion. Section 5 specified six kinds of cases where final orders of a district court were directly reviewable by the Supreme Court.[6] Section 7 provided that interlocutory injunctive orders were reviewable in courts of appeals only in cases in which these courts would review final orders. As of this time, final district court orders in antitrust cases not being directly reviewable by the Supreme Court, courts of appeals had both final and interlocutory review jurisdiction.

(2) In 1903 the Expediting Act was passed, section 2 of which made final orders in antitrust cases directly reviewable in the Supreme Court, thus withdrawing from circuit courts of appeals both the interlocutory and final review which section 7 had given them. The government deems significant a letter to the House Judiciary Committee at the time from the Attorney General in which he equates in the importance of direct review by the Supreme Court the Evarts section 5 cases, *see* n. 4, and certain antitrust cases. H.R.Rep. No. 3020, 57th Cong., 2d Sess. (1903), pp. 1–2.[7] The

government urges that because the Attorney General grouped the section 5 cases with certain antitrust cases in 1903 in justifying their direct review by the Supreme Court, it follows that Congress in later years similarly had antitrust cases in mind when it gave interlocutory review power to courts of appeals over section 5 cases and made no reference to antitrust cases. This seems to us a tenuous link at best and in the light of the clear policy of the Expediting Act, an insufficient predicate for a *sub silentio* modification of the Expediting Act.

(3) Between 1891 and 1906 the practice had grown up of alleging spurious constitutional questions in order to qualify a case under Evarts section 5 for direct Supreme Court review and thus to foreclose review of orders relating to preliminary injunctions. In 1906, therefore, Congress amended Evarts section 7, eliminating the final order limitation on jurisdiction of courts of appeals to review interlocutory injunctive orders, and providing that an appeal may be taken to a court of appeals from such an order "in any cause".

The government contends that, while the debates in Congress were concerned primarily with the practice of tacking on to a suit a spurious constitutional issue (40 Cong. Rec. 4856–4857 (1906)), the language of the legislation is sweeping and brooks no exceptions. It also leans heavily on language from the Report of the House Committee on the Judiciary (H.R.Rep. No. 542, 59th Cong., 1st Sess. (1906), p. 2), which admittedly is equally unqualified. We look at this language in its context, however, both because such a step is generally advisable and because it would seem odd for the Congress to add an interlocutory jurisdiction to the three

6. Jurisdiction, prize causes, capital or infamous crimes, construction of the Constitution, constitutionality of a law of the United States or validity or construction of a treaty, constitutionality of a constitution or law of a state.

7. The Attorney General was specifically referring only to a provision enabling an Attorney General to "secure the original hearing by a full bench of the circuit judges in the circuit" in an antitrust suit which he certifies to involve a question of great public importance. This is now 15 U.S.C. § 28.

year old section 2 of the Expediting Act without mentioning it.

The House report begins with a listing of the Supreme Court direct appeal cases in Evarts section 5; it then cites the decree limitation on the interlocutory review jurisdiction of courts of appeals and proceeds with the language we quote in the margin.[8]  The report concludes with a reference to cases where plaintiffs, after once having gotten an interlocutory order for an injunction only to have it reversed by a court of appeals, filed a new petition containing identical allegations but adding a constitutional question and neatly foreclosed appeal.  The report then commented, "The Committee is of opinion that the law should be so amended that, *in the cases mentioned,* the right of appeal [i. e., to a court of appeals] would still exist."  *Id.* at p. 3. (Emphasis supplied.)  We think it clear, therefore, that the Congress had its mind primarily on dealing with the spurious constitutional issue problem and, while dealing with it, saw fit to extend interlocutory review of courts of appeals to the Evarts section 5 types of cases, constitutional and non-constitutional.  We see no intention to deal with the problem of harmonizing the expedition of antitrust cases with the allocation of judicial burden as between the Supreme Court and the courts of appeals.

Were we construing in vacuo this 1906 legislation, we might well say that even though the Congress may not have realized that it was adding an interlocutory review jurisdiction where none had existed before, it nevertheless did just that.  But, as we have noted, this followed the Expediting Act before the ink was hardly dry, and in turn was followed by other history, both legislative and judicial.

(4) In 1911 section 129 of the Judicial Code codified Evarts section 7, changing the "in any cause" language to allow court of appeals to review interlocutory orders "notwithstanding an appeal in such case might, upon final decree under the statutes regulating the same, be taken directly to the Supreme Court." (36 Stat. 1134).  All we know of the intent of the Congress was that the purpose of the change was "to remove any doubt upon this point."  S.Rep. No. 388, 61st Cong., 2d Sess. (1911), p. 53.  Again the language is sweeping but with no indication that any substantive change in the Expediting Act was intended.  Nor, apparently, was any attempt made to take advantage of the language.[9]

---

8.  "If, in a cause involving a constitutional question or other question giving jurisdiction to the Supreme Court alone, [sic] on final decree [,] an interlocutory order or decree granting or continuing an injunction or appointing a receiver be entered, the jurisdiction of the Supreme Court on final decree in the district or circuit courts is not interfered with in the slightest by this bill.

"That jurisdiction remains undisturbed. The bill deals only with interlocutory orders and decrees of a certain kind.

"The Congress has heretofore determined it to be wise to provide a right of review of interlocutory orders and decrees granting or continuing injunctions or appointing receivers.  If it be wise to provide this right of review by the circuit court of appeals in such cases where that court now has jurisdiction on the final decree it is equally wise to allow it in all cases, and jurisdiction should be conferred for that purpose.  The right of review is granted as protection against the possible error of the district or circuit court in its interlocutory order or decree granting or continuing the injunction or appointing the receiver.  Such protection is just as necessary in a cause where a constitutional question is involved as where it is not. The constitutional question may be the main question involved, or it may be but an incident thereto."  H.R.Rep. No. 542, 59th Cong., 1st Sess. (1906), p. 2.

9.  The government's brief observes:
"Notwithstanding the plain terms of the 1911 Code, and the prior 1906 amendment, we are not aware of any Expediting Act case except *Ingersoll-Rand,* in which an appeal from an interlocutory injunction order was taken to a court of appeals. The reason may be, however, that interlocutory injunctive relief did not become of marked importance in the antitrust field until after the 1950 amendment of Section 7 of the Clayton Act.  Under the amended section, an increasing number of government civil antitrust cases have been brought against proposed mergers (includ-

(5) This bring us to the Judges' Bill of 1925 (43 Stat. 937) which amended the interlocutory review jurisdiction of courts of appeals (§ 129) by dropping the 1911 "notwithstanding" language. The relevant language then stood: "Where * * * an injunction is granted [etc.] * * * an appeal may be taken from such interlocutory order or decree to the circuit court of appeals * * *."

This legislation was unique in that the bill, and the analysis and review of its provisions were prepared by a committee of the Supreme Court on its own initiative, to reduce its obligatory jurisdiction. Hearing on S. 2060 and S. 2061 before a subcommittee of the Senate Judiciary Committee, 68th Cong., 1st Sess. (1925), pp. 1, 6. It deleted some of the old Evarts section 5 (then section 238) direct review matters from its jurisdiction: cases involving jurisdictional, prize, constitutional and treaty questions. The new section 238 read in part as follows:

"Sec. 238. A direct review by the Supreme Court of an interlocutory or final judgment or decree of a district court may be had where it is so provided in the following acts or parts of acts, and not otherwise:

"(1) Section 2 of the act of February 11, 1903, 'to expedite the hearing and determination' of certain suits brought by the United States under the antitrust or interstate commerce laws, and so forth. * * *"

[The remaining three classes of direct review cases were writs of error in certain non-double jeopardy criminal cases, appeals from interlocutory injunctions to suspend the enforcement of a state statute or order, and appeals from interlocutory and final decrees of the Interstate Commerce Commission.]

The Court committee's explanation for dropping the caveat regarding court of appeals interlocutory jurisdiction ("notwithstanding an appeal in such case might, upon final decree * * * be taken directly to the Supreme Court") was that it was "eliminated as having no further application in view of the repeal of the existing provisions of section 238, the only material changes" being the addition of modification or refusal to modify an injunction and refusal of an order to wind up a receivership as occasions for review. Hearing on S. 2060, supra, p. 12. Mr. Justice Van Devanter made clear what was in the Court committee's mind when he testified that the first and fourth classes of section 238, antitrust and interstate commerce cases, "are heard in the district court by three judges, one of whom must be a circuit judge. This and the character of the cases make it suggest that they should go directly to the Supreme Court rather than through the circuit court of appeals." Hearing on S. 2060, supra, p. 33.

It therefore appears that the Court committee—and the Congress—thought that the bill so reduced the direct Supreme Court review class of cases that all that were left were either cases where the courts of appeals now had both interlocutory and final review jurisdiction or cases where, even though the Supreme Court retained final direct review, the cases were heard originally before a statutory three judge court. But while this dichotomy covered government civil antitrust cases, certified by the Attorney General to be of general public importance and thus heard initially by a three judge court, it did not cover such cases heard by a single judge.

The question of interlocutory jurisdiction over civil antitrust cases brought before a single judge was obviously not a subject for attention—possibly because few if any litigants thought they had appeal rights from interlocutory orders. See n. 9. But this observation does not advance the argument that the Judges' Bill created a new interlocutory jurisdiction. If the 1911 "notwithstanding" language did not create such jurisdiction,

ing the instant case), and interlocutory orders against consummation of the merg-

ers have been deemed essential to effective ultimate relief."

then dropping such language because the same coverage could be achieved without it could be no more effective. Moreover, one fact stands out: section 238 clearly retained without erosion whatever jurisdiction section 2 of the Expediting Act conferred, whether interlocutory or final. There appears no intention to carve anything out of this for the courts of appeals.

Four years after the Judges' Bill became law, in 1929, *Canneries* was decided by a unanimous Court of seven judges, all of whom had been on the Court when its committee submitted the Judges' Bill. Under these circumstances we find it impossible to say that its crisp but clear interpretation of the sweep of the Expediting Act—which had remained untouched by the legislation stemming from the Judges' Bill—can be dismissed as non-binding dictum or that its holding can be distinguished because it dealt with an interlocutory jurisdiction law of the District of Columbia rather than with section 129, the predecessor of § 1292(a) (1).

(6) The only remaining development to consider is the 1948 revision of the Judicial Code which reclassified section 129 as section 1292(a) (1), adding the phrase "except where a direct review may be had in the Supreme Court." Here we say, contrary to the holding in *Ingersoll-Rand*, that the proof is manifold that codification was not intended to make changes of any significance.[10] Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 227, 77 S.Ct. 787, 1 L.Ed. 786 (1957).

We realize that time has made ancient good much less couth than it was in 1903, and that requiring Supreme Court review of final district court actions in government civil antitrust cases and barring any court of appeals review of interlocutory orders make little sense today. The call for another—and hopefully less ambiguous—change in jurisdiction has been sounded on both the judicial[11] and legislative fronts.[12] This, however, is beyond what we conceive to be the limits of our innovative reach, particularly since the subject matter is our own interlocutory jurisdiction. Baltimore Contractors' Inc. v. Bodinger, 348 U.S. 176, 185, 75 S.Ct. 249, 99 L. 233 (1945).

It may well be that the Expediting Act is a prime candidate for revision. However, the patient demands a more extensive cure than that suggested by the parties to this appeal. In order to accommodate the interest of allowing interlocutory appeals while preserving the expediting purpose of the Expediting Act— if indeed that purpose retains its priority —it would not be sufficient merely to permit the review sought here. It would also be necessary to consider imposition

---

10. The Reviser's Notes to the 1948 Code stated that the section merely "consolidates sections 225(b), 227 and part of 227(a) of title 28, U.S.C., 1940 ed., with necessary changes in phraseology to effect the consolidation." Report from the Committee on Revision of the Laws of the House of Representatives to accompany H.R. 7124, Appendix, A 107 (1946). The Senate Committee Report was to the same effect. S.Rep. No. 1559, 80th Cong., 2d Sess., pp. 1–2. *See also* the testimony of William Barron, chief reviser of the West Publishing Company, Hearings on H.R. 2055, Before Subcommittee No. 1 of the House Committee on the Judiciary, 80th Cong., 1st Sess., p. 24 (1947), and of Charles J. Zinn, Law Revision Counsel, Committee on the Judiciary, *id.*, at 40.

11. United States v. Singer Mfg. Co., 374 U.S. 174, 175, n. 1, 83 S.Ct. 1773, 10 L. Ed.2d 823 (1963); United States v. FMC Corp., 84 S.Ct. 4, 11 L.Ed.2d 20 (1963); Brown Shoe Co. v. United States, 370 U.S. 294, 357–374, 82 S.Ct. 1502, 8 L.Ed. 2d 510 (1962) (J. Harlan, concurring and dissenting opinion).

12. Recent proposals concerning revision of the Expediting Act have been based on the assumption that § 1292(a) does not allow court of appeals review of interlocutory antitrust orders. S. 1892, proposed in the 88th Congress (1963–64), provided for review of interlocutory orders under § 1292(a). This was approved by the Judicial Conference of the United States. The American Bar Association has also proposed an amendment which would allow such interlocutory review under § 1292(a). "Expediting Act Revision" (Bureau Project), 5 Harv.J.Legis. 55, 56, 59–60 (1967).

**670**

of an abbreviated appeal period,[13] or the giving of such cases a priority status on the calendar.[14] This kind of expedition, however, might not be necessary in many cases, while interlocutory orders in certain cases might be deemed important enough for certification to the Supreme Court.[15] Perhaps Congress would also wish either to abolish the little used provision for three judge courts or to distinguish between interlocutory orders from such courts as opposed to those from a single judge.[16] There is also the much discussed question whether the Attorney General or the district court or each should be empowered to certify appeals as meriting expedited Supreme Court review.[17] These proposals may not constitute major surgery but in our judgment their implementation is beyond the power of the courts.

Appeal dismissed.

13. Under the recently promulgated Federal Rules of Appellate Procedure the time from district court order to review by the court of appeals might easily take six months. If remand were necessary, the time for final disposition could require well over a year.

14. The suggestion of Gerhard A. Gesell, Esq., in "A Much Needed Reform—Repeal the Expediting Act for Antitrust Cases", in 1961 Antitrust Law Symposium—Sales and Pricing Policies Under the Antitrust Laws, 98, 101 (1961), citing as analogy 15 U.S.C. § 21 (Supp. I, 1958), now 15 U.S.C. § 21(e).

15. See Solomon, Repeal of the Expediting Act—A Negative View, in 1961 Antitrust Law Symposium—Sales and Pricing Policies Under the Antitrust Laws, 94, 97 (1961).

16. Congress might also wish to clarify the relationship of 28 U.S.C. § 1292(b) to the Expediting Act. It is at least arguable that by its literal terms the certification procedure of § 1292(b) permits interlocutory appeals in government antitrust cases since § 1292(b) covers appeal not otherwise allowed by § 1292(a). See Comment, The Antitrust Expediting Act—A Critical Reappraisal, 63 Mich.L.Rev. 1240, 1245 n. 48 (1965). Moreover, § 1292(b) appeals do not suspend a consideration of the merits unless a stay is is-

sued by the court of appeals. On the other hand § 1292(b) appeals would involve possible conflict with the policy that government antitrust actions are to be reviewed only in the Supreme Court. Unfortunately, the legislative history of § 1292(b) provides no illumination on a resolution of these interests.

17. See Comment, Direct Appeals in Antitrust Cases, 81 Harv.L.Rev. 1558, 1565–1566 (1968) ; Comment, Direct Appeal to the Supreme Court, 39 N.Y.U.L.Rev. 319, 326–327 (1964). These, along with other instructive articles, notes, and comments, see notes 3, 5, 12, 14, 15, and 16, supra, were not cited by either party.

They amount to a significant, varied, and contemporary discussion of judicial and legislative history of the Expediting Act, reexamination of its present utility, and analysis of various approaches to amending it The prevailing assumption, often made explicit, is that positive legislation is required.

While references to this body of comment would obviously have presented problems to be reckoned with, we think that the parties, particularly the government, on an important issue where the adversary safeguard was absent, should have openly faced the existence of these problems rather than have taken the risk that the court might decide the case on the basis of an inadequate background.