# TIDEWATER OIL CO. *v.* UNITED STATES ET AL.

No. 71–366. Argued October 11, 1972—Decided December 6, 1972

MARSHALL, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, BLACKMUN, and POWELL, JJ., joined. WHITE, J., filed a concurring statement, *post,* p. 174. DOUGLAS, J., filed a dissenting opinion, *post,* p. 174. STEWART, J., filed a dissenting opinion, which REHNQUIST, J., joined, and DOUGLAS, J., joined in part, *post,* p. 178.

*Moses Lasky* argued the cause for petitioner. With him on the briefs was *C. Lansing Hays, Jr.*

*A. Raymond Randolph, Jr.,* argued the cause for the United States *pro hac vice.* With him on the brief were *Solicitor General Griswold* and *Assistant Attorney General Kauper.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

On July 13, 1966, the United States filed a civil antitrust suit against Phillips Petroleum Co. (Phillips) and petitioner Tidewater Oil Co. (Tidewater). The complaint alleged that Phillips' acquisition of certain

assets and operations of Tidewater violated § 7 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 18. The District Court denied the United States' motion for a temporary restraining order to prevent consummation of the acquisition,[1] and its subsequent motion for a preliminary injunction to require either rescission of the acquisition or maintenance by Phillips of the going-concern value of the transferred assets and operations.

Petitioner continued as a party to the suit during some five years of pretrial discovery and preparation.[2] Then in April 1971, following the Government's announcement that it was ready for trial, petitioner moved to be dismissed as a party.[3] The District Court denied the motion, but found that it involved "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [the] order may materially advance the ultimate termination of this litigation." It therefore certified "its order denying defendant's motion to dismiss for interlocutory appeal under Section 1292 (b) of Title 28 of the United States Code." As required by the statute, Tidewater then applied to the Court of Appeals for the Ninth Circuit for leave to prosecute the appeal. That court, however, denied the application relying solely on its previous

---

[1] Tidewater then transferred title to its Western Marketing and Manufacturing Division to Phillips.

[2] Tidewater merged with Getty Oil Co. on September 30, 1967. It has never been contended that that merger altered Tidewater's legal status in this case.

[3] In its motion to be dismissed, Tidewater contended "that Section 7 of the Clayton Act is directed only against the acquiring corporation and not against the seller, that the sale of assets by defendant Tidewater Oil Company to Phillips Petroleum Company has long ago been consummated, that no relief is obtainable against Tidewater Oil Company, and that its presence in the suit is no longer necessary or appropriate."

decision in *United States* v. *FMC Corp.*, 321 F. 2d 534
(1963). There an attempt was made to appeal an inter-
locutory order denying a preliminary injunction in a
Government civil antitrust case. Notwithstanding that
28 U. S. C. § 1292 (a)(1) provides for an appeal of
right to the courts of appeals from an order granting or
denying preliminary injunctions, the Ninth Circuit held
that it lacked jurisdiction over such an appeal in a Gov-
ernment civil antitrust case because of § 2 of the Ex-
pediting Act of 1903, 32 Stat. 823, as amended, 15 U. S. C.
§ 29, which provides that "[i]n every civil action brought
in any district court of the United States under any of
[the Antitrust] Acts, wherein the United States is com-
plainant, an appeal from the final judgment of the dis-
trict court will lie only to the Supreme Court." In this
case, then, the Court of Appeals extended its prior ruling
to interlocutory orders within § 1292 (b). Because this
decision raises an important question of federal appellate
jurisdiction and because a conflict among the circuits
subsequently developed on this question,[4] we granted cer-
tiorari.[5] For the reasons that follow, we affirm the
decision of the Court of Appeals.

---

[4] Subsequent to the decision by the Ninth Circuit in this case,
the Court of Appeals for the Seventh Circuit held that § 1292 (b)
could be used to take an interlocutory appeal in a Government civil
antitrust case. See *Fisons Ltd.* v. *United States,* 458 F. 2d 1241,
1244–1248, cert. denied, 405 U. S. 1041 (1972). The only other
court of appeals to consider the question, the Court of Appeals for
the District of Columbia Circuit, reached the same result as the
Ninth Circuit in this case. See *Farbenfabriken Bayer, A. G.* v.
*United States,* 1968 CCH Trade Cas. ¶ 72,570, cert. denied, 393 U. S.
959 (1968); *Glaxo Group, Ltd.* v. *United States,* Misc. No. 3261
(June 25, 1968).

[5] 405 U. S. 986 (1972). We had originally denied certiorari, 404
U. S. 941 (1971).

# I

To determine the relevance of 28 U. S. C. § 1292 (b) for Government civil antitrust cases, it is necessary first to consider the original purpose of § 2 of the Expediting Act and the over half-century of experience with that section in the context of interlocutory appeals provisions that preceded the enactment of § 1292 (b) in 1958.[6]

In an effort to "expedite [certain] litigation of great and general importance," 36 Cong. Rec. 1679 (remarks of Sen. Fairbanks),[7] Congress enacted § 2 of the Expediting Act in 1903 [8] to withdraw *all* intermediate appellate jurisdiction in Government civil antitrust

---

[6] Act of Sept. 2, 1958, Pub. L. 85–919, 72 Stat. 1770.

[7] See also *Shenandoah Valley Broadcasting* v. *ASCAP*, 375 U. S. 39, 40 (1963), modified, 375 U. S. 994 (1964).

Section 1 of the Expediting Act, 15 U. S. C. § 28, requires that a three-judge district court be convened to hear any Government civil antitrust case that the Attorney General certifies to be of "general public importance." See also 49 U. S. C. § 44. This three-judge court provision is also a reflection of the "great importance" attached to Government civil antitrust cases and was intended to provide a mechanism for full consideration of such cases by a panel of judges "before presentation to the Supreme Court as if heard by the United States circuit court of appeals." H. R. Rep. No. 3020, 57th Cong., 2d Sess., 2 (1903). But this provision has been seldom used.

[8] Act of Feb. 11, 1903, § 2, 32 Stat. 823, as amended, Act of Mar. 3, 1911, § 291, 36 Stat. 1167; Act of June 9, 1944, c. 239, 58 Stat. 272; Act of June 25, 1948, § 17, 62 Stat. 989. As originally enacted, the statute read in relevant part as follows:

"That in every suit in equity pending or hereafter brought in any circuit court of the United States under any of said Acts, wherein the United States is complainant, . . . an appeal from the final decree of the circuit court will lie only to the Supreme Court and must be taken within sixty days from the entry thereof . . . ."

There is no contention here that the very minor changes in wording effected by the subsequent amendments and codifications of the statute in any way altered the original meaning of the Act.

cases. At the time of the passage of the Expediting Act, the then recently established circuit courts of appeals [9] had jurisdiction under the Evarts Act over an appeal not only from a "final decision" [10] but also from "an interlocutory order or decree" granting or continuing an injunction or appointing a receiver *"in a cause in which an appeal from a final decree may be taken . . . to the circuit court of appeals."* [11] Hence, by lodging exclusive appellate jurisdiction over the "final judgment of the district court" in this Court, the Expediting Act necessarily eliminated court of appeals jurisdiction over appeals from interlocutory, as well as final, decrees in Government civil antitrust cases.

Congress thus initially determined to speed appellate review by channeling appeals in Expediting Act cases directly to this Court and to avoid the delay inherent in piecemeal appeal by conditioning appeal upon the presence of a "final judgment." [12] But mere speed in

---

[9] Act of Mar. 3, 1891, § 2, 26 Stat. 826.

[10] Act of Mar. 3, 1891, § 6, 26 Stat. 828.

[11] Act of June 6, 1900, c. 803, 31 Stat. 660, amending Act of Mar. 3, 1891, § 7, 26 Stat. 828, as amended, Act of Feb. 18, 1895, 28 Stat. 666 (emphasis added).

[12] In *United States* v. *California Cooperative Canneries,* 279 U. S. 553, 558 (1929), Mr. Justice Brandeis, speaking for the Court, detailed the causes of delay that prompted the Expediting Act:

"Congress sought by the Expediting Act to ensure speedy disposition of suits in equity brought by the United States under the Anti-Trust Act. Before the passage of the Expediting Act the opportunities for delay were many. From a final decree in the trial court under the Anti-Trust Act an appeal lay to the Circuit Court of Appeals; and six months were allowed for taking the appeal. From the judgment of the Court of Appeals an appeal lay to this Court; and one year was allowed for taking that appeal. Act of March 3, 1891, c. 517, §§ 6, 11, 26 Stat. 826, 828, 829. See *United States* v. *E. C. Knight Co.,* 60 Fed. 306; 60 Fed. 934; 156 U. S. 1; *United States* v. *Trans-Missouri Freight Association,* 53 Fed. 440; 58 Fed. 58; 166 U. S. 290. Moreover, there might

the disposition of Government civil antitrust cases was not Congress' only concern; that result might have been achieved simply by establishing procedures for the expeditious handling of such cases in the courts of appeals. Congress was also intent upon facilitating review by this Court "of a class of antitrust cases deemed particularly important." [13] Because of the importance of uniform interpretation of the antitrust law,[14] which was still in its infancy in 1903, it is understandable that Congress chose to establish this special appellate procedure for Government civil antitrust cases, which were thought generally to involve issues of wide importance.[15]

During the 25 years following the enactment of the Expediting Act, Congress amended the Evarts Act provision governing interlocutory appeals to the courts of

---

be an appeal to the Circuit Court of Appeals from a decree granting or denying an interlocutory injunction, Act of June 6, 1900, c. 803, 31 Stat. 660."

See also *United States Alkali Export Assn.* v. *United States,* 325 U. S. 196, 203 (1945).

[13] *United States* v. *Cities Service Co.,* 410 F. 2d 662, 664 (CA1 1969); see *Brown Shoe Co.* v. *United States,* 370 U. S. 294, 364 (1962) (Harlan, J., dissenting in part and concurring in part); 36 Cong. Rec. 1679 (remarks of Sen. Fairbanks); cf. n. 7, *supra.*

[14] Act of July 2, 1890, c. 647, 26 Stat. 209.

[15] In saying this, we are not to be understood as necessarily accepting today an important premise that underlies § 2—namely, that the courts of appeals, subject to review on certiorari in this Court, are incapable of providing the uniformity of interpretation necessary to the administration of the antitrust laws. See *infra,* at 170. In 1903, the courts of appeals had been in existence for only 12 years and various reservations about them had not yet been dispelled. See F. Frankfurter & J. Landis, The Business of the Supreme Court 258 (1927). Since that time, we have had over a half-century of experience with the courts of appeals—including experience in the field of private antitrust litigation—which has resolved any initial doubts. See *ibid.*

appeals on four separate occasions—in 1906,[16] 1911,[17] 1925,[18] and 1928.[19] It can be argued that on its face the very first of these amendments once again made interlocutory appeals available to the courts of appeals in Government civil antitrust cases and that the language of each successive amendment, where relevant, perpetuated that state of affairs.[20] But, while the clear meaning of statutory language is not to be ignored, "words are inexact tools at best," *Harrison* v. *Northern Trust Co.*, 317 U. S. 476, 479 (1943), and hence it is essential that we place the words of a statute in their proper context by resort to the legislative history. Nowhere is this better illustrated than in this case. For we find it in-

[16] Act of Apr. 14, 1906, c. 1627, 34 Stat. 116.

[17] Act of Mar. 3, 1911, § 129, 36 Stat. 1134.

[18] Act of Feb. 13, 1925, amending § 129, 43 Stat. 937.

[19] Act of Apr. 11, 1928, c. 354, 45 Stat. 422.

[20] The 1906 amendment removed the limitation on interlocutory appeal to causes "in which an appeal from a final decree may be taken . . . to the circuit court of appeals" and provided simply that such an appeal may be taken to the court of appeals "in any cause." Act of Apr. 14, 1906, c. 1627, 34 Stat. 116. In codifying the Evarts Act interlocutory appeals provision in 1911, "in any cause" was struck, and the provision was amended to allow the courts of appeals to entertain appeals from interlocutory orders "notwithstanding an appeal in such case might, upon final decree under the statutes regulating the same, be taken directly to the Supreme Court." Act of Mar. 3, 1911, § 129, 36 Stat. 1134. Finally, the famous Judges' Bill of 1925, in turn struck the "notwithstanding" language, with the result that the codified provision, § 129, simply allowed an appeal to be "taken from [an] interlocutory order or decree [granting or denying an injunction or appointing a receiver] to the circuit court of appeals . . . ." Act of Feb. 13, 1925, amending § 129, 43 Stat. 937.

The 1928 amendment is completely without relevance here since it merely extended the applicability of the statute to interlocutory orders issued by the District Courts of Alaska, Hawaii, the Virgin Islands, and the Canal Zone. Act of Apr. 11, 1928, c. 354, 45 Stat. 422.

conceivable that Congress, having purposefully with-
drawn the jurisdiction of the courts of appeals in certain
antitrust cases in 1903, would re-establish it in the same
cases—but only for interlocutory orders—just three years
later in 1906, without making any reference to that pur-
pose. Yet no mention of either the Expediting Act or
Government civil antitrust cases is to be found in the
legislative history of the 1906 amendment to the inter-
locutory appeals provision [21]—or, for that matter, in that
of the successive amendments insofar as they are rele-
vant; [22] rather, for each amendment some purpose wholly
unrelated to Expediting Act cases is apparent from the
relevant legislative materials.[23] In light of this, we find

[21] See S. Rep. No. 2192, 59th Cong., 1st Sess. (1906): H. R. Rep.
No. 542, 59th Cong., 1st Sess. (1906); 40 Cong. Rec. 1723, 1742,
4429, 4856–4857, 5056.

[22] As to the 1911 amendment, see S. Rep. No. 388, 61st Cong., 2d
Sess., pt. 1, p. 53 (1910); H. R. Doc. No. 783, 61st Cong., 2d Sess.,
57 (1910); H. R. Rep. No. 818, 61st Cong., 2d Sess. (1910); S. Doc.
No. 848, 61st Cong., 3d Sess. (1911); 45 Cong. Rec. 4001. As to
the 1925 amendment, see S. Rep. No. 362, 68th Cong., 1st Sess., 3
(1924); H. R. Rep. No. 1075, 68th Cong., 2d Sess., 4–5 (1925);
Hearing on S. 2060 and S. 2061 before a Subcommittee of the Senate
Committee on the Judiciary, 68th Cong., 1st Sess., 12 (1924).

[23] Thus, the 1906 amendment, see n. 20, *supra*, was intended to
render ineffective certain evasive pleading tactics that had there-
tofore been employed to take advantage of the fact that under the
Evarts Act an interlocutory appeal could be taken where only a
nonconstitutional issue was at stake but not where a constitutional
issue was involved. See H. R. Rep. No. 542, 59th Cong., 1st Sess.,
2–3 (1906); 40 Cong. Rec. 1723 (remarks of Rep. Brantley); *id.*, at
4856 (remarks of Sen. Bacon).

The legislative history concerning the 1911 amendment, see n. 20,
*supra*, indicates that the "notwithstanding" language was designed
to "remove any doubt" that the limitation—initially struck by
the 1906 amendment—on interlocutory appeals to those cases in
which an appeal might be taken to the court of appeals after a
final decree had been eliminated. But this merely suggests an intent
finally to resolve with even more specific language the problem of

it impossible to ascribe to Congress an intent to impair the original exclusivity of this Court's jurisdiction under § 2 through any of these amendments to the interlocutory appeals provision.

---

evasive pleading which had motivated the 1906 amendment. See S. Rep. No. 388, 61st Cong., 2d Sess., pt. 1, p. 53 (1910). Thus, in response to inquiry whether this amendment constituted "a change in the existing law," Senator Heyburn, a sponsor of the legislation, said on the Senate floor, "This is the existing law." 45 Cong. Rec. 4001.

As to the 1925 version of the interlocutory appeals provision, see n. 20, *supra*, the analysis prepared by the committee of this Court which drafted it explained that the "notwithstanding" language was "eliminated as having no further application in view of the repeal of" the provisions that had necessitated the initial 1906 amendment. Hearing on S. 2060 and S. 2061 before a Subcommittee of the Senate Committee on the Judiciary, 68th Cong., 1st Sess., 12 (1924). And if the addition of the "notwithstanding" language in 1911 did not establish court of appeals jurisdiction over interlocutory orders in Expediting Act cases, we fail to see how dropping that language in 1925 did so. At the same time, elsewhere in the Judges' Bill, § 2 of the Expediting Act was carried forward without alteration. See Act of Feb. 13, 1925, amending § 238 (1), 43 Stat. 938. In doing so, it was stated: "A direct review by the Supreme Court of an interlocutory or final judgment or decree of a district court may be had where it is so provided in the following Acts or parts of Acts, *and not otherwise:* (1) Section 2 of the Act of February 11, 1903, 'to expedite the hearing and determination' of certain suits brought by the United States under the antitrust . . . laws . . . ." *Ibid.* (emphasis added). Section 2, of course, has never contained a provision allowing appeal of interlocutory orders. Moreover, Mr. Justice Van Devanter, a member of this Court's committee that prepared the bill, testified before the Senate Committee that the character of Expediting Act cases "suggest[s] that they should go directly to the Supreme Court rather than through the circuit courts of appeals" without any indication that an exception was being introduced for interlocutory appeals to the courts of appeals. Hearing on S. 2060 and S. 2061 before a Subcommittee of the Senate Committee on the Judiciary, 68th Cong., 1st Sess., 33 (1924). See also S. Rep. No. 362, 68th Cong., 1st Sess., 3 (1924).

This clearly was the view of the seven members of the unanimous Court in *United States* v. *California Cooperative Canneries,* 279 U. S. 553 (1929). There, in rejecting the argument that an appeal lay to the court of appeals from an order denying a motion to intervene in a Government civil antitrust case, the Court stated: [24]

> "[The Evarts Act] provisions governing appeals in general were amended by the Expediting Act so that in suits in equity under the Anti-Trust Act 'in which the United States is complainant,' the appeal should be direct to this Court from the final decree in the trial court. *Thus, Congress limited the right of review to an appeal from the decree which disposed of all matters . . . ; and it precluded the possibility of an appeal to either [this Court or the court of appeals] from an interlocutory decree."* *Id.,* at 558 (emphasis added).

And a decade and a half later, in *Allen Calculators* v. *National Cash Register Co.,* 322 U. S. 137, 142 (1944), the Court reiterated "that jurisdiction to review District Court decrees was not vested in the Circuit Courts of Appeals but solely in this court, and [the Expediting Act] limited the right of appeal to final decrees." It is true that interlocutory orders in Government civil antitrust cases were subsequently held reviewable by way of extraordinary writs under the All Writs Act, 28 U. S. C. § 1651 (a), but application for the extraordinary writ must be made to this Court where "sole appellate jurisdiction lies" in such cases. *United States Alkali Export Assn.* v. *United States,* 325 U. S. 196, 201–203 (1945);

---

[24] Certainly the Court spoke fully cognizant of at least the amendment contained in the Judges' Bill of just four years before, see n. 20, *supra,* since all seven sitting Justices had been on the Court when its committee submitted the bill to Congress.

*De Beers Consolidated Mines* v. *United States,* 325 U. S. 212, 217 (1945).[25]

The wording of the interlocutory appeals provision was again altered in the 1948 revision of the Judicial Code.[26] The result—after certain subsequent minor changes not here relevant[27]—was the present 28 U. S. C. § 1292 (a) (1), which allows "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refus-

---

[25] In *Alkali Export Assn.,* the Court went on to say:

"[Extraordinary] writs may not be used as a substitute for an authorized appeal; and where, as here, *the statutory scheme [the Expediting Act] permits appellate review of interlocutory orders only on appeal from the final judgment,* review by certiorari or other extraordinary writ is not permissible in the face of the plain indication of the legislative purpose to avoid piecemeal reviews." 325 U. S., at 203 (emphasis added).

Nevertheless, the Court found that exigent circumstances associated with the District Court's denial of the defendant's motion to dismiss the action justified immediate review by common-law certiorari in the particular case. *Id.,* at 203–204.

The Court in *De Beers,* stating that "[w]hat is . . . said [in *Alkali Export Assn.*] applies in this instance," 325 U. S., at 217, granted review under the All Writs Act of a preliminary injunction, although normally review would have been to the court of appeals under what is now 28 U. S. C. § 1292 (a)(1).

Of course, nothing we say today signifies a retreat from our previous statements that *appeals* of interlocutory orders in Government civil antitrust cases cannot be taken even to this Court.

[26] Act of June 25, 1948, 62 Stat. 929.

[27] In 1951 reference to the District Court of Guam was inserted in the section, Act of Oct. 31, 1951, § 49, 65 Stat. 726, and reference to the District Court for the Territory of Alaska was removed from the section effective upon the admission of Alaska into the Union in 1959, Act of July 7, 1958, § 12 (e), 72 Stat. 348. Finally, when subsection (b) was added to the section, the former entire section was designated subsection (a). Act of Sept. 2, 1958, Pub. L. 85–919, 72 Stat. 1770.

ing or dissolving injunctions . . ." [28] to be appealed to the courts of appeals *"except where a direct review may be had in the Supreme Court."* (Emphasis added.) This final clause is susceptible of two plausible constructions that yield opposite results in cases subject to the Expediting Act. A direct review of interlocutory orders in Government civil antitrust cases clearly may be had in this Court, thus barring resort to § 1292 (a)(1)—or so it would seem. But direct review may not be had when the interlocutory order is entered since there is no "final judgment," the predicate of an appeal under the Expediting Act. Therefore, were the final clause construed as directed only at the present availability of review in this Court, it would not, on its face, bar an interlocutory appeal. However, the function of the Revisers of the 1948 Code was generally limited to that of consolidation and codification.[29] Consequently, a well-established principle governing the interpretation of provisions altered in the 1948 revision is that "no change is to be presumed unless clearly expressed." *Fourco Glass Co.* v. *Transmirra Products Corp.,* 353 U. S. 222, 228 (1957). We find no such clear expression here. To the contrary, the Revisers' Notes fail to reveal any intention to expand the scope of the pre-existing jurisdiction of the courts of appeals over interlocutory appeals; the new § 1292 is described merely as a consolidation of a number of previously separate code provisions—including the gen-

---

[28] The portion of the provision governing appeal of interlocutory orders appointing receivers and related matters became 28 U. S. C. § 1292 (2) (1946 ed., Supp. II), now 28 U. S. C. § 1292 (a)(2).

[29] See S. Rep. No. 1559, 80th Cong., 2d Sess., 1–2 (1948) ("great care has been exercised to make no changes in the existing law which would not meet with substantially unanimous approval"); H. R. Rep. No. 308, 80th Cong., 1st Sess., 1–8 (1947).

eral interlocutory appeals provision—"with necessary changes in phraseology to effect the consolidation." [30]

In sum, then, our examination of the history and evolution of the present § 1292 (a)(1)—the direct descendant of the original interlocutory appeals provision contained in the Evarts Act—has convinced us that at least up to the passage of § 1292 (b) in 1958, Congress had not impaired the original exclusivity of this Court's jurisdiction under § 2 of the Expediting Act. As is usually true of questions of statutory construction, the issue is not totally free from doubt.[31] Yet, in the last analysis, whatever ambiguity may exist in the lengthy history of the original interlocutory appeals provision relative to the Expediting Act, it results primarily from the absence of any consideration of Government civil antitrust cases in that history and thus emphasizes the extent to which appellate jurisdiction in such cases has long been viewed as a peculiarly distinct matter. Cf. *United States Alkali Export Assn.* v. *United States,* 325 U. S., at 202–203. Certainly, this conclusion finds substantial support in our prior decisions in which we have consistently interpreted our appellate jurisdiction under § 2 as exclusive.[32]

---

[30] H. R. Rep. No. 2646 of the Committee on Revision of the Laws of the House of Representatives to accompany H. R. 7124, 79th Cong., 2d Sess., App. A107–108 (1946). See also H. R. Rep. No. 308 of the Committee on the Judiciary of the House of Representatives to accompany H. R. 3214, 80th Cong., 1st Sess., App. A110–111 (1947).

[31] Compare n. 20, *supra,* with n. 23, *supra.*

[32] See *supra,* at 160–161. Similarly, two of three courts of appeals which have considered the question have concluded that an interlocutory appeal does not lie under § 1292 (a)(1) in Expediting Act cases. See *United States* v. *Cities Service Co.,* 410 F. 2d 662 (CA1 1969); *United States* v. *FMC Corp.,* 321 F. 2d 534 (CA9 1963). But see *United States* v. *Ingersoll-Rand Co.,* 320 F. 2d 509, 511–517 (CA3 1963).

## II

With this background, the question becomes what effect, if any, the enactment of § 1292 (b) in 1958 had upon this Court's theretofore exclusive appellate jurisdiction in Government civil antitrust cases. Section 1292 (b) provides in relevant part:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . ."

At the outset petitioner contends that there is simply no conflict between this provision and § 2 of the Expediting Act. It suggests that "civil action" must be read as an all-inclusive phrase that covers, *inter alia*, Government civil antitrust cases. At the same time, it points out that § 1292 (b) is concerned only with interlocutory orders, while the Expediting Act deals only with final judgments. Thus, petitioner concludes that the enactment of § 1292 (b) made discretionary interlocutory appeals available where none had previously existed, and that the two statutes are in complete harmony with one another.

Such a facile argument could also be made to support the contention that § 1292 (a)(1) can be invoked in Expediting Act cases—were it not for the fact that, as we have already seen, § 2 does not merely apply solely to a "final judgment" but also *limits* the right of appeal to a

"final judgment." Likewise, we can hardly accept petitioner's suggestion that when Congress enacted § 1292 (b), it wrote upon a clean slate insofar as appeals from interlocutory orders in Expediting Act cases are concerned. Nor do we find in § 1292 (b) the "sharp break with the traditional policy" of limited availability of interlocutory appeal so apparent to the dissent. The new provision hardly created a general right of interlocutory appeal; rather, it only extended the availability of such appeals to a limited group of orders—not previously covered by § 1292 (a)—that involve "a controlling question of law" the immediate appeal of which "may materially advance the ultimate termination of the litigation." [33] In short, the consistent construction that had been accorded § 2 prior to the enactment of § 1292 (b) [34] cannot simply be ignored in determining the impact of that section on Government civil antitrust cases, cf. *Universal Interpretive Shuttle Corp.* v. *Washington Metropolitan Area Transit Comm'n,* 393 U. S. 186, 191–194 (1968). Acceptance of petitioner's contention would require us to conclude that § 1292 (b) was intended to revise the policies underlying the Expediting Act for the first time—that it was intended as the first departure from the purposes of avoiding piecemeal appeal and of limiting review of important questions of antitrust law to this Court. We have been unable to discern any such intention.

[33] Cf. S. Rep. No. 2434, 85th Cong., 2d Sess., 3 (1958); H. R. Rep. No. 1667, 85th Cong., 2d Sess., 2 (1958).

[34] It was only subsequent to the enactment of § 1292 (b) that a single Court of Appeals concluded—despite the unqualified statements by this Court since *United States* v. *California Cooperative Canneries,* 279 U. S., at 558, to the contrary—that an interlocutory appeal would lie under § 1292 (a)(1) in a Government civil antitrust case. See *United States* v. *Ingersoll-Rand Co.,* 320 F. 2d, at 511–517. See also *Fisons Ltd.* v. *United States,* 458 F. 2d, at 1244–1248, cert. denied, 405 U. S. 1041 (1972) (§ 1292 (b)).

The legislative history associated with § 1292 (b) contains no mention of cases within the Expediting Act.[35] Reference, to be sure, was made to antitrust cases, but it is clear on the face of these statements[36] that they refer only to private treble-damages actions.[37] In fact, rather than indicating that § 1292 (b) was intended to apply to antitrust cases subject to final review in this Court under the Expediting Act, the legislative history strongly suggests an essentially contrary conclusion: the subsection was intended to apply *only* to interlocutory orders, "not otherwise appealable under" § 1292 (a), in civil actions in which the courts of appeals would have jurisdiction over an appeal from the final judg-

---

[35] See S. Rep. No. 2434, 85th Cong., 2d Sess. (1958); H. R. Rep. No. 1667, 85th Cong., 2d Sess. (1958); Hearings on H. R. 6238 before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 2d Sess. (1958); 104 Cong. Rec. 8002 (remarks of Rep. Keating). See also Report of the Proceedings of the Regular Annual Meeting of the Judicial Conference of the United States 32–33 (1951); Report of the Proceedings of a Special Meeting of the Judicial Conference of the United States 7 (1952); Report of the Proceedings of the Regular Annual Meeting of the Judicial Conference of the United States 27–28 (1953).

[36] The Senate Report suggests the denial of a motion to dismiss an antitrust action as barred by the statute of limitations as one instance in which an interlocutory appeal might be desirable. But it goes on to state:

"Disposition of antitrust cases may take considerable time, *yet upon appeal following final disposition of such cases, the court of appeals may well determine* that the statute of limitations had run and for that reason the district court did not have jurisdiction." S. Rep. No. 2434, 85th Cong., 2d Sess., 3 (1958) (emphasis added). The reference to antitrust cases in Chief Judge John J. Parker's testimony at the hearings on § 1292 (b) was also clearly limited to private treble-damages actions. See Hearings on H. R. 6238 before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 2d Sess., 9 (1958).

[37] 38 Stat. 731, 15 U. S. C. § 15.

ment under 28 U. S. C. § 1291. For instance, in explaining the proposed statute, the Senate Report on § 1292 (b) states:[38]

> "The bill results from a growing awareness of the need for expedition of cases pending before the district courts. Many cases which are filed in the Federal district courts require the district judge to entertain motions at an early stage in the proceedings which, if determined, against the plaintiff, *result in a final order which would then be appealable to the circuit courts of appeals of the United States.* However, *such motions,* if determined in the plaintiff's favor, are interlocutory since they do not end the litigation and are not therefore, under existing provisions of law, appealable."

This is hardly supportive of petitioner's position, and yet throughout the legislative materials the focus similarly remains on interlocutory orders in civil cases that would be appealable to the courts of appeals upon final judgment.[39]

Petitioner's case is further weakened by the extraordinary result that acceptance of its position would yield. Section 1292 (a) provides for an appeal as a matter of right from a number of specified types of interlocutory orders—in particular, interlocutory orders granting or denying injunctions. Those interlocutory orders not within subsection (a), however, were made appealable in § 1292 (b), subject to the judgment and discretion of the district court and the court of appeals. Greater importance obviously was attached to those

---

[38] S. Rep. No. 2434, 85th Cong., 2d Sess., 2 (1958) (emphasis added).

[39] See *id.,* at 2–3; H. R. Rep. No. 1667, 85th Cong., 2d Sess., 1 (1958); Hearings on H. R. 6238 before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 2d Sess., 8 (1958).

types of interlocutory orders specified in subsection (a) than to those covered by (b).[40] Nevertheless, petitioner would have us conclude that Congress intended to establish court of appeals jurisdiction for all interlocutory orders in Expediting Act cases, *except* those orders for which an appeal of right is provided in § 1292 (a)(1).[41] As the Government notes, such a result would effectively turn § 1292 on its head.[42] Consistent with the evident thrust of the statute's legislative history, the much more sensible conclusion is that § 1292 (b) was intended to establish jurisdiction in the courts of appeals to review interlocutory orders, other than those specified in § 1292 (a), in civil cases in which they would have jurisdiction were the judgments final.[43]

---

[40] Cf. H. R. Rep. No. 1667, 85th Cong., 2d Sess., 1–2 (1958).

[41] Petitioner suggests two avenues of escape from this anomalous situation: (1) that under § 1292 (a)(1) an interlocutory appeal may in fact lie from an injunctive order in a Government civil antitrust case; (2) that if an appeal from such an order cannot be taken under § 1292 (a), it may nevertheless be taken under § 1292 (b) since, the argument goes, the latter applies to all orders not appealable under the former, "whatever the nature of the order and whatever the reason for its non-appealability." Reply Brief for Petitioner 7–8. Our discussion in Part I of this opinion is sufficient to dispose of petitioner's first contention. As to the second argument, while the language of § 1292 (b) is unqualified on its face, the legislative history indicates that Congress was concerned only with orders of types other than those specified in § 1292 (a); in other words, § 1292 (b) was intended to supplement § 1292 (a), not to provide a substitute for it. See n. 35, *supra.* Moreover, it would be, to say the least, extraordinary for Congress to have resorted to such a subtle method of establishing for the first time in Government civil antitrust cases interlocutory appeals for orders of the type specified in § 1292 (a) without giving any hint whatsoever that this was its purpose.

[42] Brief for United States 18.

[43] Nor can it be ignored that subsequent to both the 1948 revision which resulted in § 1292 (a) and the enactment of § 1292 (b), we have reaffirmed that a final judgment is an essential prerequisite

At the foundation of the petitioner's position in this case is the contention that § 1292 (b) is the panacea for the special burdens imposed on this Court by § 2 of the Expediting Act. Both the Court and various individual Members have on occasion commented that "[w]hatever may have been the wisdom of the Expediting Act in providing direct appeals in antitrust cases at the time of its enactment in 1903, time has proven it unsatisfactory," for "[d]irect appeals not only place a great burden on the Court but also deprive us of the valuable assistance of the Courts of Appeals." *United States* v. *Singer Mfg. Co.,* 374 U. S. 174, 175 n. 1 (1963); see *Ford Motor Co.* v. *United States,* 405 U. S. 562, 595 n. 5 (1972) (BURGER, C. J., concurring in part and dissenting in part); *United States* v. *Borden Co.,* 370 U. S. 460, 477n. (1962) (Harlan, J., dissenting); *Brown Shoe Co.* v. *United States,* 370 U. S. 294, 355 (1962) (Clark, J., concurring); *id.,* at 364–365 (Harlan, J., dissenting in part and concurring in part). Further, in light of the present size of our docket, direct review "seldom results in much expedition" since we normally must examine the entire record and resolve all questions however unsubstantial. *Id.,* at 355 (Clark, J., concurring); see *id.,* at 364 (Harlan, J., dissenting in part and concurring in part); *United States* v. *Borden Co., supra,* at 477 n. (Harlan, J., dissent-

---

to an appeal of an order issued in a government civil antitrust case since "Congress . . . limited the right of review in such cases to an appeal from a decree which disposed of all matters, and it precluded the possibility of an appeal either to this Court or to a Court of Appeals from an interlocutory decree." *Brown Shoe Co.* v. *United States,* 370 U. S., at 305 n. 9. Section 1292 was not, to be sure, specifically at issue in *Brown Shoe.* But in holding, as it did, that the District Court's decree was appealable only because it was "final," *id.,* at 306–309, the Court necessarily foreclosed the possibility of an interlocutory appeal to *any* court, and thus its remark concerning the preclusion of interlocutory appeals cannot be lightly dismissed.

ing). Our action today should not be construed as a retreat from these previous remarks. On the contrary, we remain convinced that under present circumstances the Expediting Act fails to hasten substantially the final disposition of important antitrust actions while it unjustifiably burdens this Court with inadequately sifted records and with cases that could be disposed of by review in the courts of appeals. Uniformity in the interpretation and administration of the antitrust laws continues to be an important consideration. But such uniformity could be adequately ensured by the availability of review in this Court on certiorari of cases involving issues of general importance—together with the "[l]imited expediting of such cases, under the discretion of this Court," *Ford Motor Co.* v. *United States, supra,* at 595 n. 5 (BURGER, C. J., concurring in part and dissenting in part), where time is a factor. The simple fact is that "[t]he legal issues in most [Government] civil antitrust cases are no longer so novel or unsettled as to make them especially appropriate for initial appellate consideration by this Court, as compared with those in a variety of other areas of federal law," *Brown Shoe Co.* v. *United States, supra,* at 364 (Harlan, J., dissenting in part and concurring in part). Yet, despite all of these criticisms, our personal views as to the wisdom of § 2 are, of course, no basis for disregarding what we are bound to recognize as the plain and unaltered intent of Congress to require that appeals in Government civil antitrust cases be taken only from final judgments and only to this Court.

In any event, petitioner has failed to convince us that permitting appeals under § 1292 (b) would provide a meaningful solution—if any solution at all—to the various problems created for the Court by the Expediting Act. In the first place, the availability of interlocutory appeals under § 1292 (b) would not reduce the number of Government civil antitrust cases that could be brought

to this Court on direct appeal upon the entrance of a final judgment. Nor would it reduce the number of issues subject to review by this Court; any issue determined on interlocutory appeal would normally be open to consideration on final appeal,[44] and doubtless some party would raise an issue appealed under § 1292 (b) since it must have involved "a controlling question of law." Also, there would be the added problem of applications for certiorari following a certified appeal in Expediting Act cases. By definition, the issue will be a substantial one and, where the appellate decision is questionable, it would be necessary to decide whether to grant certiorari, which might require the Court to consider a particular case, on two separate occasions,[45] or to deny certiorari, which might mean allowing the district court to proceed to final judgment on an erroneous basis. Given the potential waste of limited judicial resources—those either of this Court or of the district court—associated with each choice, neither can be considered attractive. Finally, in emphasizing the value of the screening function that court of appeals review would provide in Expediting Act cases, we have consistently focused upon the lengthy records and complex factual issues common to such cases. Yet, as is illustrated by this very case, in which the certified question relates to a motion to dismiss a party, questions that would be presented to the courts of appeals under § 1292 (b) would often involve threshold procedural issues not

---

[44] The sole exception to this would be if the certified question had previously been considered by way of certiorari.

[45] Only if we were to dispose of a controlling question in such a way as to end all proceedings would the possibility of a subsequent appeal be foreclosed. A threshold issue of jurisdiction might present such a controlling question; but even that type of issue will often not end an entire Government civil antitrust case which might involve a number of parties—as is true in this case where the certified question relates to only one of the two defendants.

requiring extensive analysis of the record.[46] With respect to such issues the screening function performed by intermediate appellate review is of far less significance than it would be with respect to questions of, say, relevant market, competition, or agreement. But these latter questions can be properly decided only after full development of the evidence, and it is therefore doubtful at best that interlocutory appeals would aid this Court in dealing with them on final review.[47]

Nor are we even certain that the expeditious termination of litigation in the district courts—the express purpose of § 1292 (b) [48]—would be materially advanced in the context of Government civil antitrust cases by acceptance of petitioner's contention. Permitting interlocutory appeals under § 1292 (b) in Expediting Act

---

[46] See also *Fisons Ltd.* v. *United States,* 458 F. 2d 1241 (CA7), cert. denied, 405 U. S. 1041 (1972) (service of process); *Farbenfabriken Bayer, A. G.* v. *United States,* 1968 CCH Trade Cas. ¶ 72,570 (CADC), cert. denied, 393 U. S. 959 (1968) (quasi *in rem* jurisdiction).

[47] Other than threshold procedural issues, the question consistently sought to be raised on interlocutory appeal has been the propriety of orders granting or denying preliminary injunctions with respect to proposed acquisitions. See *United States* v. *Cities Service Co.,* 410 F. 2d 662 (CA1 1969); *United States* v. *FMC Corp.,* 321 F. 2d 534 (CA9 1963); *United States* v. *Ingersoll-Rand Co.,* 320 F. 2d 509 (CA3 1963). Although appeals of such orders would involve the merits of the antitrust actions, the fact is that permitting interlocutory appeal under § 1292 (b) would not bring these orders and the related evidence before the courts of appeals since they come within § 1292 (a) (1). Cf. n. 41, *supra.* Moreover, because of the need for speed if an acquisition is to be enjoined before accomplished, requests for such interlocutory orders must be determined after, at most, only an initial hearing and without full development of the record. Consequently, appeals from such orders would not necessarily bring before the courts of appeals the lengthy records and numerous documents with which we have often been forced to deal after final judgment.

[48] See S. Rep. No. 2434, 85th Cong., 2d Sess., 1–2 (1958).

cases would result in an anomalous situation: the court of appeals would have jurisdiction over certain interlocutory orders but not over the final judgment, which would be appealable only to this Court. An interlocutory appeal taken under § 1292 (b) must, of course, involve "a controlling question of law" the immediate appeal of which "may materially advance the ultimate termination of the litigation." In the normal case, the decision of such a question on interlocutory appeal is final since the same court reviews the final judgment, and the likelihood of review in this Court on certiorari is very small. Here, however, the decision of the court of appeals on the interlocutory order would essentially be only an advisory opinion to the district court since the issue would usually be open to relitigation on appeal of the final judgment to this Court.[49] The net result would be added work for the courts of appeals,[50] with no assurance that there would ultimately be a saving of district court time.

## III

Hence, we conclude that § 1292 (b) did not establish jurisdiction in the Court of Appeals over interlocutory orders in Expediting Act cases. The exclusive nature of

---

[49] Of course, this problem would not exist if the interlocutory decision were reviewed immediately on certiorari in this Court; but, as we have already seen, this alternative entails serious problems of its own.

[50] In this respect, it must be recalled that interlocutory appeal under § 1292 (b) is subject to the decision of the court of appeals in the exercise of its discretion, to allow appeal of the question certified by the district court. Thus, the effectiveness of § 1292 (b) in Government civil antitrust cases would be dependent upon the willingness of the courts of appeals to assume this new burden aware of the limited import of their decisions and of the fact that interlocutory appeals in such cases would represent only added work for them, since they would not otherwise consider any appeal.

the jurisdiction created in § 2 of the Expediting Act has consistently been recognized by this Court, and we hold today that that exclusivity remains unimpaired. Despite our interest in a restructuring of our jurisdiction under the Expediting Act, we are neither willing nor able to adopt the ungainly half measure offered by the petitioner in this case.

*Affirmed.*

MR. JUSTICE WHITE joins the Court's opinion except for the advisory to Congress reflecting one view of the relative merits of the Expediting Act.

MR. JUSTICE DOUGLAS, dissenting.

I agree with MR. JUSTICE STEWART that the appeal of the interlocutory order in this case to the Court of Appeals under 28 U. S. C. § 1292 (b) was not barred by the Expediting Act. But I disagree with the intimations in both the majority opinion and the other dissenting opinion that because of our overwork the antitrust cases should first be routed to the courts of appeals and only then brought here.[1]

The case for our "overwork" is a myth. The total number of cases filed has increased from 1063 cases in the 1939 Term to 3643 in the 1971 Term. That increase has largely been in the *in forma pauperis* cases, 117 being filed in the 1939 Term and 1930 in the 1971 Term. But we grant certiorari or note probable jurisdiction in very few cases. The signed opinions of the Court (which are only in argued cases) totaled 137 in the 1939 Term with

---

[1] It is true that several Justices over the years have expressed the desire that the antitrust cases come to us only by certiorari to the courts of appeals. So far as I am aware the only opinion speaking for the Court containing that suggestion is *United States* v. *Singer Mfg. Co.*, 374 U. S. 174. But there the idea was contained only in a footnote (*id.*, at 175 n. 1); and as Mr. Chief Justice Hughes was wont to say, "Footnotes do not really count."

six *per curiams* [2] or a total of 143 Court opinions, while in the 1971 Term we had 129 signed opinions of the Court and 20 *per curiams* [3] or a total of 149 Court opinions. So in terms of petitions for certiorari granted and appeals noted and set for argument our load today is substantially what it was 33 years ago.

The load of work so far as processing cases is concerned has increased. That work is important; and in many ways it is the most important work we do. For the selection of cases across the broad spectrum of issues presented is the very heart of the judicial process. Once our jurisdiction was largely mandatory and the backlog of cases piled high. The 1925 Act [4] changed all that, leaving to the Court the selection of those certiorari cases which seem important to the public interest. The control of the docket was left to the minority, only four votes out of nine being necessary to grant a petition. The review or sifting of these petitions is in many respects the most important and, I think, the most interesting of all our functions. Across the screen each Term come the worries and concerns of the American people— high and low—presented in concrete, tangible form. Most of these cases have been before two or more courts already; and it is seldom important that a third or fourth review be granted. But we have national standards for many of our federal-state problems and it is important, where they control, that the national standards be uniform; and it is equally important where state law is supreme, that the States be allowed to experiment with various approaches and solutions.

Neither taking that jurisdiction from us nor the device of reducing our jurisdiction is necessary for the perform-

---

[2] Not including orders of dismissal or affirmance.

[3] Including orders of dismissal or affirmance.

[4] Judiciary Act of Feb. 13, 1925, 43 Stat. 936.

ance of our duties. We are, if anything, underworked, not overworked. Our time is largely spent in the fascinating task of reading petitions for certiorari and jurisdictional statements. The number of cases taken or put down for oral argument has not materially increased in the last 30 years.

The Expediting Act, 15 U. S. C. §§ 28, 29, involved in the present case, does not contribute materially to our caseload. In the 1967 Term we had 12 such cases but only three of them were argued, the others being disposed of summarily. In the 1968 Term we had eight, but only three were argued. In the 1969 Term we had four; only two being argued. In the 1970 Term only two such cases reached us and each was argued. In the 1971 Term four such cases reached us, two of them being argued.[5]

If there are any courts that are surfeited, they are the courts of appeals. In my Circuit—the Ninth—it is not uncommon for a judge to write over 50 opinions for the court in one term. That Circuit has at the present time a 15-month backlog of civil cases, while we are current. The average number of signed opinions for the Court in

---

[5] *Ford Motor Co.* v. *United States,* 405 U. S. 562; *United States* v. *Topco Associates,* 405 U. S. 596.

The antitrust cases not argued in the 1967–1971 Terms were either reversed out of hand or affirmed out of hand (some of these being companion cases to those that were argued), or dismissed as moot, or dismissed for want of jurisdiction. There were three dismissed for want of jurisdiction.

*Farbenfabriken Bayer A. G.* v. *United States,* 393 U. S. 216, involved an interlocutory order in which we ruled that we had no jurisdiction. *Standard Fruit & S. S. Co.* v. *United Fruit Co.,* 393 U. S. 406, involved an effort of a corporation, not a party, to inspect the divestiture plans being submitted to the District Court pursuant to a consent judgment. *Garrett Freightlines* v. *United States,* 405 U. S. 1035, involved an appeal from a defendant dismissed from the antitrust case because of the primary jurisdiction of the Interstate Commerce Commission over the acquisition in question.

this Court is close to 12 per Justice; only occasionally does anyone write even as many as 18; and we have no backlog.

Separate opinions—including dissents and concurring opinions—multiply. If they are added to the total of 149 for the 1971 Term, the overall number would be 328. But the writing of concurrences, dissents, or separate opinions is wholly in the discretion of the Justice. It is not mandatory work; it is writing done in the vast leisure time we presently have.

The antitrust cases are only small fractions of our caseload. Yet they represent large issues of importance to the economy, to consumers, and to the maintenance of the free-enterprise system. Congress has expressed in the Sherman Act,[6] the Clayton Act,[7] the Robinson-Patman Act,[8] and the Celler-Kefauver Act[9] a clear policy to keep the avenues of business open, to bar monopolies, and to save the country from the cartel system which is the product of gargantuan growth.

It is of course for Congress and Congress alone to determine whether the Expediting Act[10] should bring the

---

[6] Sherman Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U. S. C. §§ 1–7.

[7] Clayton Act of Oct. 15, 1914, 38 Stat. 730, 15 U. S. C. § 12 et seq., § 44.

[8] Robinson-Patman Act of June 19, 1936, 49 Stat. 1526, 15 U. S. C. §§ 13, 13a, 13b, 21a, 1013.

[9] Celler-Kefauver Act of Dec. 29, 1950, 64 Stat. 1125, 15 U. S. C. §§ 18, 21.

[10] For the legislative history of the Act see H. R. Rep. No. 3020, 57th Cong., 2d Sess.

Senator Fairbanks, leading exponent of the Act, said in reporting it to the Senate: "The far-reaching importance of the cases arising under antitrust laws now upon the statute books or hereafter to be enacted, and the general public interest therein, are such that every reasonable means should be provided for speeding the litigation. It is the purpose of the bill to expedite litigation of great and general importance. It has no other object." 36 Cong. Rec. 1679.

antitrust cases directly here. While I join the statutory construction in MR. JUSTICE STEWART's dissent, I do not join that part which expresses to me an inaccurate account of the "overwork" of the Court. We are vastly underworked. One interested in history will discover that once upon a time Hugo Black wrote over 30 opinions for the Court in a Term where only 135 opinions were written for the Court, a few more than we all wrote last Term.

MR. JUSTICE STEWART, with whom MR. JUSTICE REHN-QUIST concurs, and MR. JUSTICE DOUGLAS concurs in part, dissenting.

The Expediting Act, enacted in 1903, provides that in civil antitrust actions brought by the United States "an appeal from the *final judgment* of the district court will lie only to the Supreme Court." (Emphasis added.) Section 1292 (b), enacted in 1958, provides that when a district court, "in making in a civil action an order not otherwise appealable under this section," shall appropriately certify the question involved, the court of appeals has discretionary jurisdiction to hear an interlocutory appeal from that order. Thus, the Expediting Act, by its terms, relates only to appeals from *final* judgments in a limited category of cases, while § 1292 (b) applies to appeals from certain *interlocutory* orders in *all* civil actions. The Expediting Act does not prohibit court of appeals jurisdiction under § 1292 (b), for the former applies only to final judgments, while the latter applies only to interlocutory orders. To find any inconsistency whatever between the two statutes thus requires rejection of the plain meaning of each of them—rejection, in short, of a most basic principle of statutory construction. As the Court of Appeals for the Seventh Circuit recognized in *Fisons Ltd.* v. *United States,* 458 F. 2d 1241, 1245 (1972), "the language of each [can] be given full effect without limiting the scope of the other."

Moreover, the purpose of § 1292 (b) is wholly consistent with that of the Expediting Act. The 1903 statute was motivated by the view that Government antitrust actions are so important that they should be expedited. *Shenandoah Valley Broadcasting* v. *ASCAP*, 375 U. S. 39, 40 (1963).[1] So, too, the motivation behind § 1292 (b), enacted 55 years later, was the contemporary view that interlocutory appeals involving important and controlling questions of law are a useful means of expediting litigation. Although § 1292 (b) authorizes a departure from the general rule against interlocutory appeals, it does so only for the purpose of materially advancing the ultimate termination of the litigation.[2] Thus, the Ex-

---

[1] In reporting the bill that became the Expediting Act, Senator Fairbanks stated that:

"[E]very reasonable means should be provided for speeding the litigation. It is the purpose of the bill to expedite litigation of great and general importance. It has no other object." 36 Cong. Rec. 1679.

[2] The Senate Report on the bill that became § 1292 (b) stated:

"This legislation results from a considerable study by committees of the Judicial Conference. The legislation itself was introduced at the request of the Administrative Office of the United States Courts pursuant to the direction of the Judicial Conference of the United States. . . . The bill results from a growing awareness of the need for expedition of cases pending before the district courts. Many cases which are filed in the Federal district courts require the district judge to entertain motions at an early stage in the proceedings which, if determined, against the plaintiff, result in a final order which would then be appealable to the circuit courts of appeals of the United States. However, such motions, if determined in the plaintiff's favor, are interlocutory since they do not end the litigation and are not therefore, under existing provisions of law, appealable. . . .

"The committee believes that this legislation constitutes a desirable addition to the existing authority to appeal from interlocutory orders of the district courts of the United States. . . . Any legislation, therefore, appropriately safeguarded, which might aid in the

pediting Act and § 1292 (b) are animated by precisely the same objectives and warranted by precisely the same circumstances, and they should be read together as supplementing one another, not as antagonistic.

The legislative history of § 1292 (b) indicates that its primary benefit was expected to occur in the protracted or "big" cases, including civil antitrust litigation.[3] Yet, if no appeal can be taken to a court of appeals under § 1292 (b) in a civil antitrust suit where the Government is plaintiff, then the purpose behind the statute cannot be served at all in these cases, for no statute provides for such an interlocutory appeal directly to this Court. It seems to me that if Congress had wanted to exclude cases like this one from the beneficent provisions of § 1292 (b), it would have said so.[4]

---

disposition of cases before the district courts of the United States by saving useless expenditure of court time is such as to require the approbation of all those directly concerned with the administration of justice in the United States." S. Rep. No. 2434, 85th Cong., 2d Sess., 2, 4 (1958).

[3] The Senate Report stated:

"There are many civil actions from which similar illustrations could be furnished. For example, in an antitrust action a plea may be entered that the claim is barred by the statute of limitations. If this motion is denied, under existing law the matter is not appealable and the case then goes forward to trial. Disposition of antitrust cases may take considerable time, yet upon appeal following final disposition of such cases, the court of appeals may well determine that the statute of limitations had run and for that reason the district court did not have jurisdiction." Id., at 3.

[4] Although the antitrust cases referred to in the Senate Committee Report on § 1292 (b) were apparently private cases, rather than Government litigation, the proposed legislation was introduced, after considerable study, at the direction of the Judicial Conference of the United States (n. 2, supra), whose members—all eminent federal judges—were surely familiar with the appellate procedure in civil antitrust cases brought by the Government.

The Expediting Act originally provided that Government antitrust cases would be heard by a panel of judges upon the certification of the Attorney General. That provision is now 15 U. S. C. § 28, which provides for a panel of three. The purpose of the provision was to ensure that cases would receive full consideration by a panel of judges before presentation to this Court.[5] The Expediting Act, of course, has been criticized because it routes complex cases directly here without benefit of screening by the courts of appeals. As we stated in *United States* v. *Singer Mfg. Co.,* 374 U. S. 174, 175 n. 1 (1963):

> "Whatever may have been the wisdom of the Expediting Act in providing direct appeals in antitrust cases at the time of its enactment in 1903, time has proven it unsatisfactory. . . . Direct appeals not only place a great burden on the Court but also deprive us of the valuable assistance of the Courts of Appeals."

See also *Brown Shoe Co.* v. *United States,* 370 U. S. 294, 355 (1962) (Clark, J., concurring); *id.,* at 364–365 (Harlan, J., dissenting in part and concurring in part); *United States* v. *Borden Co.,* 370 U. S. 460, 477 n. (1962) (Har-

---

[5] The House Report on the bill explains this provision by quoting a letter of the Attorney General as follows:

"There are a number of cases now provided by statute where appeals may be made directly to the Supreme Court from the district and circuit courts . . . .

"The class of cases that I suggest should be brought within this rule, it seems to me, is of as great importance as any of those referred to. The suggested provision requiring a full bench of the circuit judges would insure the cases receiving as full consideration before presentation to the Supreme Court as if heard by the United States circuit court of appeals." H. R. Rep. No. 3020, 57th Cong., 2d Sess., 2 (1903).

lan, J., dissenting); *Ford Motor Co.* v. *United States,* 405 U. S. 562, 595 n. 5 (1972) (BURGER, C. J., concurring in part and dissenting in part). Interlocutory appeals under § 1292 (b) in Government antitrust cases would provide screening of at least some issues in at least some cases by courts of appeals before those issues reach this Court; and this, as shown above, would be consistent with the original policy of the Expediting Act. The Court's decision today precludes, in cases like this, both the useful expediting effect of § 1292 (b) and the equally desirable potential of intermediate review by the courts of appeals of important legal issues.

It is said that a ban on court of appeals jurisdiction under § 1292 (b) in Government antitrust cases is to be derived from the provisions of § 1292 (a)(1). The latter section provides that the courts of appeals shall have jurisdiction of appeals from interlocutory orders of district courts granting or denying injunctions "except where a direct review may be had in the Supreme Court." The argument is that that language expressly excludes court of appeals jurisdiction in Expediting Act cases; and since there is nothing in the language of § 1292 (b) that contradicts this express exclusion, interlocutory orders in Expediting Act cases are likewise not appealable under § 1292 (b). If § 1292 (b) did allow court of appeals jurisdiction in this case, it is said, the result would be that an interlocutory order in a Government antitrust case could be appealed to a court of appeals only if it did not involve an injunction; and that result would effectively turn § 1292 on its head, because in non-Expediting Act cases, § 1292 gives priority to injunctive orders, which may be appealed as of right.

There are several answers to this argument. At the outset, it is not clear that the major premise—that § 1292 (a)(1) expressly excludes court of appeals jurisdiction in Expediting Act cases—is valid. On that question, the

Circuits are divided, the First and the Ninth denying their jurisdiction,[6] and the Third upholding appealability.[7] We have never before faced the question nor resolved the conflict.

But even if the Expediting Act does bar court of appeals jurisdiction to review interlocutory injunctive orders under § 1292 (a)(1) in Government antitrust cases, it does not follow that there must be a similar bar to § 1292 (b) jurisdiction. The very fact that § 1292 (a) (1) contains express language which at least arguably creates an exception to court of appeals jurisdiction, while § 1292 (b) contains no such language, is reason enough to treat the two differently. Beyond that, § 1292 (a)(1) has a history dramatically different from § 1292 (b). That history was thoroughly reviewed in *United States* v. *Cities Service Co.,* 410 F. 2d 662 (CA1 1969), in *United States* v. *Ingersoll-Rand Co.,* 320 F. 2d 509 (CA3 1963), and in the Court's opinion today, *ante,* at 155–163, and need not be discussed in detail here. Suffice it to say that the original version of § 1292 (a)(1) was

---

[6] *United States* v. *Cities Service Co.,* 410 F. 2d 662 (CA1 1969); *United States* v. *FMC Corp.,* 321 F. 2d 534 (CA9 1963).

[7] *United States* v. *Ingersoll-Rand Co.,* 320 F. 2d 509 (CA3 1963). The reasoning of the Third Circuit in this case was as follows: Section 1292 (a)(1) permits an appeal to a court of appeals of interlocutory injunctive orders "except where a direct review may be had in the Supreme Court." Since the Supreme Court has direct review in Expediting Act cases *only* from final judgments, it has none from interlocutory orders. Hence, the exception in § 1292 (a)(1) does not bar court of appeals jurisdiction over interlocutory injunctive orders in Government antitrust cases. The court then concluded:

"In fact, it is extremely difficult and requires doing violence to the language of the statute to escape the conclusion that interlocutory orders, such as the one at bar, are reviewable by a court of appeals excepting and only excepting those types of cases in which an interlocutory order is directly reviewable by the Supreme Court." 320 F. 2d, at 517.

enacted in 1891, and that the provision went through several changes in language in succeeding years, during which its relationship to the 1903 Expediting Act was often unclear. See *United States* v. *Cities Service Co.,* 410 F. 2d, at 666–669. The provision was finally codified in its present form in 1948, although, as the above-mentioned conflict among the circuits demonstrates, that codification did not make its relationship to the Expediting Act any clearer. Section 1292 (b), on the other hand, was an entirely new statute, written on a clean slate in 1958, and representing a sharp break with the traditional policy against appeals from noninjunctive interlocutory orders. At that time, there was already growing doubt about the wisdom of the Expediting Act; and the fact that Congress conferred § 1292 (b) jurisdiction without making any express exception for cases where direct review may be had in this Court—such as had been in § 1292 (a)(1) for some years—is surely some indication that Congress in 1958 was expressing the contemporary view that interlocutory appeals to the courts of appeals on controlling questions of law provide a desirable tool that should not be denied even in Expediting Act cases.

As to the point that this interpretation would "turn § 1292 on its head," it is certainly arguable that if an appeal from an injunctive order in an Expediting Act case cannot be had under § 1292 (a)(1), it may still be taken under § 1292 (b). Section 1292 (b) relates to orders "not otherwise appealable under this section," whatever the nature of the order and whatever the reason for its nonappealability. Hence, if, in Government antitrust cases, courts of appeals have no jurisdiction under § 1292 (a)(1), then an interlocutory injunctive order would be an order "not otherwise appealable," and § 1292 (b)'s discretionary jurisdiction might well be held to apply.

In short, there is no validity to the argument that the terms of § 1292 (a)(1), whatever they may mean, have any bearing upon the proper interpretation of § 1292 (b).

It is also argued that the basic policy of the Expediting Act was to remove *all* court of appeals jurisdiction in Government antitrust cases. According to this argument, although the Act speaks only of final judgments, it must be understood to include interlocutory appeals, since, at the time the Act was passed, the courts of appeals could review interlocutory orders only in cases where they could review final judgments. From *United States* v. *California Cooperative Canneries,* 279 U. S. 553, 558 (1929), to *Brown Shoe Co.* v. *United States,* 370 U. S., at 305 n. 9, the argument goes, this Court has consistently indicated that courts of appeals may not exercise jurisdiction in Expediting Act cases, regardless of whether the appeal is from a final or interlocutory order; and it should not be assumed that Congress in 1958 repealed this longstanding interpretation by legislation that is not addressed specifically to appeals in these cases.

I fail to see how we effect anything like a repealer of the Expediting Act by construing § 1292 (b) to permit court of appeals jurisdiction thereunder in Expediting Act cases. As demonstrated above, there is no inconsistency whatever between this construction of § 1292 (b) and the plain language of the Expediting Act. It is equally clear that the reason why in 1903, and indeed for 55 years thereafter, courts of appeals could not review noninjunctive interlocutory orders in cases where they could not review the final judgment is not that the Expediting Act forbade such review, but that there was no statutory authority for such review in any cases whatsoever. In 1958, however, Congress broke with the old policy against interlocutory appeals from noninjunctive orders and specifically provided that such appeals

may be taken to the courts of appeals in their discretion in *all* civil actions, where the question is properly certified. I see no reason, in the absence of some statutory prohibition, to refrain from applying that clear language, whether or not the court of appeals can review the final judgment.

The cases cited by the Government do not persuade me otherwise. *California Canneries,* of course, was decided 29 years before the enactment of § 1292 (b); and whatever was said there was a judgment on what Congress had done, not on what it could do or on the meaning of what it was to do 29 years later. *Brown Shoe* does postdate the enactment of § 1292 (b); but that case involved a direct appeal to this Court, and the only question about appealability was whether the appealed order was final. The issue of court of appeals jurisdiction under § 1292 (b) was not involved there, nor was the 1958 Act even mentioned in the short footnote dictum so heavily relied on by the Government. That dictum did little more than quote the language of *California Canneries,* and it surely cannot be understood to decide the issue now before us.

Finally, it is said that it would be anomalous for a court of appeals that is without jurisdiction to entertain an appeal from a final judgment to decide an interlocutory issue that could control the outcome of the case. But there is *no* case in which the judgment of a court of appeals is necessarily final. Whenever a court of appeals decides a controlling question of law in any litigation, its views are subject to review here. Far from being anomalous, interlocutory review of potentially dispositive questions by the courts of appeals in Government antitrust cases would be helpful to this Court, giving us the benefit of intermediate appellate consideration in these cases. We could then exercise our certiorari power informed by the reasoning of an appellate

court, and there might be no later direct appeal at all from the final judgment. And surely interlocutory appeals under § 1292 (b) in Government antitrust cases would serve to lighten the burden on trial courts and litigants alike.

We cannot, of course, create an appellate jurisdiction not created by Congress, however desirable. But what Congress has conferred, we should not reject.

I would reverse the order of the Court of Appeals denying Tidewater's petition to appeal under § 1292 (b) for lack of jurisdiction, and I would remand this case to that court with directions to consider the merits of the petition to appeal.